UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:   09-20138-CR-HUCK

UNITED STATES OF AMERICA,
            Plaintiff,

     v.

ALEXIS CARRAZANA,
            Defendant.
_____/

### DEFENDANT, ALEXIS CARRAZANA'S OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT AND SENTENCING MEMORANDUM

The Defendant, Alexis Carrazana, through counsel, respectfully submits the following objections to the Pre-Sentence Investigation Report [hereinafter "PSI"] and sentencing memorandum.   In support, Mr. Carrazana states the following:

1)      Objection to Paragraph 12- In early 2004, Carrazana had withdrawn from the conspiracy.  Thus, this paragraph is not relevant to his offense conduct. U.S.S.G. §3B1.3

2.      Objection to Paragraph 13-    Carrazana never administered the medication called Rituxan during his employment at Midway.  WinRho is a purified human immunoglobulin used to treat immune thrombocytopenic purpura or ITP.  The medication administered by Carrazana was RhoGAM, another brand of Rho(D) (Immune Globulin Intravenous Human) like WinRho.  According to the official website for RhoGAM and WinRho, the only contraindication that exists in these medications is when the medication is given to a Rh-positive patients. (Exhibit A).  Otherwise, the side effects are minimal and would not cause serious harm or death.  Carrazana only administered this drug to Rh-negative patients.  There was never any infusion of medication given

1

that had significant contraindications and side effects that can cause serious patient harm.

      3)    <u>Objection to Paragraph 15</u>-   Carrazana had no dealings with Diagnostic Medical Center, Inc.  Thus, this paragraph is not relevant to his offense conduct. U.S.S.G. §3B1.3.

      4)    <u>Objection to Paragraph 17</u>-   Carrazana was not involved in any other medical facilities during this conspiracy.  Thus, this paragraph is not relevant to his offense conduct. U.S.S.G. §3B1.3.

      5)    <u>Objection to Paragraph 18</u>-   Carrazana was not involved nor charged in money laundering activities.  He was paid a weekly salary and received no other benefits from the fraudulent activities of the improper billing.  Thus, this paragraph is not relevant to his offense conduct. U.S.S.G. §3B1.3.

      6)    <u>Objection to Paragraph 20</u>-   Carrazana submits that he did take affirmative steps to withdraw from the conspiracy.

      7)    <u>Objection to Paragraph 26</u>-   According to the government's figures provided by Medicare, the company fraudulently billed $8,800,000 between September 2002 and April 2004; an intended loss of $7,040,000.  Carrazana worked at Midway through March, 2004.  Carrazana submits that his intended loss is under $7,040,000 because he withdrew from the conspiracy.

      To establish the affirmative withdrawal from the conspiracy, the defendant has the burden of proving: (1) that he has taken affirmative steps, inconsistent with the objectives of the conspiracy, to disavow or to defeat the objectives of the conspiracy; and (2) that he made a reasonable effort to communicate those acts to his co-conspirators or that he disclosed the scheme to law enforcement authorities. *United States v. Starrett*, 55 F.3d 1525, 1550 (11th Cir. 1995); *United States v. Dabbs*, 134 F.3d 1071, 1083 (11th Cir. 1998).  In March 2004, Carrazana quit working at Midway Medical

Center.  After a brief three month period where he worked for Garcia's sister at her clinic, Carrazana had no further communications or contact with the participants in the conspiracy.  Unlike most of the other participants who were laundering money and personally receiving the benefits of the fraudulent billing, Carrazana was merely an employee.  When first hired, he was earning a salary of $500 per week for the job of medical assistant.  In March, 2003, Garcia paid for Carrazana to obtain his certificate as a phlebotomist and IV Tech.  After he was performing the job of three people, in approximately October 2003, Carrazana's salary was increased to $1,000 per week gross. Carrazana's actions of quiting and having no further contact with the co-conspirators shows 1) his affirmative steps to disavow the conspiracy and 2) his effort to communicate to the co-conspirators that he no longer wanted to participate in the conspiracy.

8)   <u>Objection to Paragraph 33</u>-   Carrazana is accountable for an intended loss of $7,040,000.  Further, he should be entitled to a minor role reduction.

9)   <u>Objection to Paragraph 40</u>-   A two level increase for sophisticated means should not be given to Carrazana.  Application note 8(B) to §2B1.1(b)(9) defines "sophisticated means" as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense.  For example, in a telemarketing scheme, locting the main office of the scheme in one jurisdiction but locating soliciting operations in another jurisdiction ordinarily indicates sophisticated means.  Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means."  There is no evidence in the current case that this offense involved sophisticated means.

3

10)     <u>Objection to Paragraph 41</u>-    A two level enhancement should not be added since the offense did not inolve the conscious or reckless risk of death or serious bodily injury.  U.S.S.G. §2B1.1(b)(13)(A).  As discussed above, Carrazana never administered the RhoGAM to patients who were Rh-positive.  Further, there is no evidence that any patient suffered any serious bodily injury or death.

11)     <u>Objection to Paragraph 43- Adjustment for Role in the Offense</u>:     Carrazana should receive a reduction for minor role. Section 3B1.2 of the Sentencing Guidelines provides:

(a)     If the defendant was a minimal participant in any criminal activity,

decrease by four levels.

(b)     If the defendant was a minor participant in any criminal activity,

decrease by two levels.

In cases falling between (a) and (b), decrease by three levels.

The Commentary to U.S.S.G. § 3B1.2 provides that "a *minor* participant means any participant who *is less culpable than most other* participants, but whose role could not be described as minimal." *Id.,* comment. (n. 3) (emphasis added). The Supreme Court has held that the Commentary is conclusive in interpreting the Guidelines and may neither be changed nor disregarded by the courts. *See United States v. Stinson,* 508 U.S. 36, 113 S. Ct. 1913, 1917 (1993).

In the instant case, Carrazana clearly did not participate to the level that the other co-conspirators participated.  He was never involved in any of the billing process.  He did not know how much the company was billing nor how much they were receiving.  He never received any additional profits but rather worked as an employee doing as he was told to do for fear that he would be fired.

12)   <u>Objection to Paragraph 45-Adjusted Offense Level (subtotal)</u>: The adjusted offense level should be 26 and broken down as follows:

|                            |                    |
|----------------------------|--------------------|
| Base Offense Level         | 6                  |
| Specific Offense Charac.   | +20                |
| Adjustment for Role        | + 2 (special skill)|
|                            | - 2 (minor role)   |
|                            | 26                 |

13)   <u>Objection to Paragraph 49</u>-   The total offense level should be 23 (26 minus 3 for acceptance of responsibility).

14)   <u>Addition to Paragraph 61</u>-   Carrazana's first wife's full name was Ania Molina and his second wife's name was Antonia Ramirez.

15)   <u>Objection to Paragraph 71</u>-   The Midway Medical center was located at 85 Grand Canal Drive not 8360 W. Flagler Street.  Additionally, Carrazana earned $1,000 per week.  At no time did he gross more than $1,000 per week.

16)   <u>Objection to Paragraph 80</u>-   Based upon a total offense level of 23 and a criminal history category of I, the guideline imprisonment range should be 46-57 months.

<u>**SENTENCING MEMORANDUM**</u>

The Court is well aware of the sea-change with sentencing law.  The sentencing guidelines are no longer mandatory, *United States v. Booker*, 125 S. Ct. 785 (2005), and do not even carry a presumption of reasonableness in this Circuit.  *United States v. Hunt*, 459 F.3d 1180 (11th Cir. 2006) (explaining that courts "may determine, on a case-by-case basis the weight to give the Guidelines, so long as that determination is made with reference to the remaining Section 3553(a) factors that

5

the court must also consider in calculating the defendant's sentence").[1]   In fact, the *Hunt* Court

explained that there are "many instances where the Guidelines range will not yield a reasonable

sentence." *Id*. at 11.   In the present case, the facts that support a substantial downward departure are

as follows:

> Mr. Carrazana arrived in the United States in 1996.  He is a permanent legal
> resident.
>
> Mr. Carrazana has had no prior criminal arrests throughout his life.
>
> Mr. Carrazana had good intentions when he was hired by Midway Medical
> Center as a medical assistant.  At that time, he was unaware of any plans by the
> owner to fraudulently bill Medicare.  It was only the fear of losing his job that he
> performed the tasks told to him by the doctors and the owner.
>
> At no time did Mr. Carrazana put any patients at physical harm or risk by the
> infusions given.
>
> Other than his normal salary, Mr. Carrazana did not benefit financially from the
> fraudulent billing.
>
> Mr. Carrazana is not similarly situated to the other co-conspirators.
>
> The specific offense characteristics require an increase of 20 levels to the
> guideline calculation for a loss of more than $7,000,000 but less than
> $20,000,000.  Carrazana's loss amount was $7,040,000.  Mr. Carrazana should
> receive a lesser sentence than someone who's loss amount is closer to
> $20,000,000.  Further, Carrazana had no dealings with the billing and was
> unaware of the amounts billed to Medicare.

---

[1] 18 U.S.C. §3553(a) provides the following factors to be determined when imposing a sentence: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established; (5) any pertinent Sentencing Commission policy statement; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

Based on all of these factors, Mr. Carrazana should receive a downward departure.[2]  We respectfully request the Court to sentence the Defendant a sentence below the advisory guidelines of 46-57 months, and we would appreciate the opportunity to address the other personal characteristics of Mr. Carrazana at sentencing in further detail.

Respectfully submitted,
KATHLEEN M. WILLIAMS
FEDERAL PUBLIC DEFENDER

By:     s/ Sabrina D. Puglisi
Sabrina D. Puglisi
Assistant Federal Public Defender
Florida Bar No.  324360
150 West Flagler Street, Suite 1700
Miami, Florida 33130
Tel:   305-530-7000 / Fax:  305-536-4559
E-Mail: sabrina_puglisi@fd.org

## CERTIFICATE OF SERVICE

I HEREBY certify that on **May 28, 2009**, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/ Sabrina D. Puglisi
Sabrina D. Puglisi

---

[2]  The Eleventh Circuit repeatedly has affirmed similar below guideline sentences after *Booker*.  *United States v. Clay,* 483 F.3d 789 (11th Cir. 2007) (affirming 60 month sentence even though guidelines were 188-235 months); *United States v. Gray*, 453 F.3d 1323 (11th Cir. 2006) (affirming 72 month sentence even though low end of guidelines were 151 months, more than double sentence imposed; *United States v. Halsema*, 180 Fed. Appx. 103 (11th Cir. 2006) (unpublished) (affirming 24 months sentence even though guidelines were 57-71 months); *United States v. Williams*, 435 F.3d 1350 (11th Cir. 2006) (90 months' imprisonment was sufficient, but not greater than necessary to punish, deter, and rehabilitate defendant even though low end of guidelines was 188 months); *United States v. Neufeld*, 223 Fed.Appx. 887 (11th Cir. 2007) (10 level offense downward variance based in part on disparity among co-defendants).

7

**SERVICE LIST**
**UNITED STATES v. ALEXIS CARRAZANA**
**CASE NO.  09-20138-CR-HUCK**

**United States District Court, Southern District of Florida**

Sabrina D. Puglisi                              John K. Neal
sabrina_puglisi@fd.org                          john.neal@usdoj.gov
Federal Public Defender                         U.S. Attorney's Office
150 W. Flagler St., Suite 1700                  99 N.E. 4th Street
Miami, FL 33130-1556                            Miami, FL 33132
Telephone:(305) 530-7000                        Telephone:(305) 961-9100
Facsimile: (305) 536-4559                       Facsimile: (305) 530-7976
Attorney for Alexis Carrazana                   Attorney for the Government
Service Via CM/ECF                              Service Via CM/ECF


                                   _s/Sabrina D. Puglisi_____
                                   Sabrina D. Puglisi

8